Arthur W. Coviello (SBN 291226)
  arthur.coviello@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6069

Michael J. Summersgill (*pro hac vice*)
  michael.summersgill@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

[Additional Counsel Listed in Signature Block]

*Attorneys for Plaintiff and Counterclaim-Defendant*
*Akamai Technologies, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKAMAI TECHNOLOGIES, INC., | Case No. 2:22-cv-06233-MCS-SHKx |
| Plaintiff and Counterclaim-Defendant, | **AKAMAI TECHNOLOGIES, INC.'S MEMORANDUM AND POINTS OF AUTHORITY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** |
| v. | |
| MEDIAPOINTE, INC. and AMHC, INC., | Hearing Date: March 25, 2024 |
| Defendants and Counterclaimant. | Time: 9:00 a.m. |
| | Location: Courtroom 7C, 7th Floor |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................... 1

II.   FACTUAL BACKGROUND ................................................... 2

    **A.**   Akamai Brought This Declaratory Judgment Action To Resolve MP's Infringement Claims, Which It First Asserted in Texas ...................... 2

    **B.**   MP Pursued A Meritless "GTM" Infringement Theory During Fact Discovery—And Then Abandoned It In Expert Discovery ................ 3

    **C.**   Akamai Notified MP That It Intended To Seek Attorneys' Fees Due To MP's Meritless Infringement Claims And Litigation Conduct ...... 6

    **D.**   The Court Struck MP's Untimely "Mapper" Infringement Theory ...... 7

    **E.**   The Court Granted Summary Judgment of Non-Infringement on MP's Untimely "Mapper" Infringement Theory ............................ 9

III.   ARGUMENT ..................................................................... 10

    **A.**   MP's Infringement Theories Were Exceptionally Meritless ............. 11

    **B.**   MP Litigated This Case In An Objectively Unreasonable Manner .... 13

    **C.**   MP's Other Litigation Tactics Needlessly Increased The Cost Of Akamai's Defense ................................................... 14

IV.   CONCLUSION .................................................................. 17

Akamai's Memo ISO Motion for Attorney's Fees      Case No. 2:22-cv-06233-MCS-SHKx

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Kilopass Tech. Inc. v. Sidense Corp.*,
  Case No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12,
  2014) ..............................................................................................12, 13, 14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)..............................................................2, 10, 11, 13

*Phigenix, Inc. v. Genentech, Inc.*,
  Case No. 15-CV-01238-BLF, 2018 WL 3845998 (N.D. Cal. Aug.
  13, 2018) .......................................................................................2, 14

*Seal4Safti, Inc. v. Cal. Expanded Metal Prod. Co.*,
  Case No. 20-CV-10409-MCS-JEM, 2022 WL 18397130 (C.D.
  Cal. Dec. 15, 2022) ...............................................................................12

**Federal Statutes**

35 U.S.C. § 285 ........................................................................2, 10, 14, 17

**Other Authorities**

U.S. Patent No. 9,426,195.............................................................................3

## I.     INTRODUCTION

MediaPointe, Inc. ("MediaPointe" or "MP") imposed significant and unwarranted costs on Akamai by pursuing infringement claims in this case that had no basis—even after discovery showed that its infringement theories were wrong and its own expert disavowed the infringement theory MP offered in its infringement contentions.

In its June 22, 2023 Final Infringement Contentions ("FICs"), after six months of discovery, MP asserted that Akamai's Global Traffic Management ("GTM") product met the "management center" requirement of all asserted claims of U.S. Patent Nos. 8,559,426 ("'426 patent") and 9,426,195 ("'195 patent") (together, the "Asserted Patents")—despite having received interrogatory responses, documents, and source code months earlier showing that GTM had nothing to do with the claimed "management center."  Two months after its FICs, MP's own expert, Dr. Aviel Rubin, recognized in his August 21, 2023 report that MP's GTM infringement theory was wrong and disavowed it.  In its place—and without seeking leave to amend its contentions—MP then improperly attempted to assert a new and equally baseless infringement theory in Dr. Rubin's report in which it alleged that Akamai's Mapping System (known as "Mapper") is the alleged "management center." Following expert discovery and significant motion practice, the Court granted Akamai's motion to strike MP's untimely Mapper infringement theory and further granted summary judgment that Akamai did not infringe all remaining asserted patent claims under MP's untimely Mapper infringement theory. Dkt. 181, 182. The Court entered final judgment for Akamai on February 9, 2024.  Dkt. 208.

MP's pursuit of baseless infringement theories throughout fact discovery, its untimely and improper disclosure of new infringement theories in its expert's report, and its decision to maintain this litigation against Akamai even after discovery showed that its claims were meritless makes this an exceptional case that warrants

an award of attorneys' fees under 35 U.S.C. § 285. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554-56 (2014) (holding that a case is "exceptional" under 35 U.S.C. § 285 if it "stands out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated"; finding that maintenance of baseless claims warrants a fee award); *Phigenix, Inc. v. Genentech, Inc.*, 2018 WL 3845998, at *6-7 (N.D. Cal. Aug. 13, 2018) (awarding attorneys' fees when plaintiff made an untimely attempt to change its infringement contentions and an "unreasonable determination to forge ahead with prolonged litigation when it had no tenable theory of infringement").

Akamai respectfully requests that the Court award Akamai its attorneys' fees for the period of this case after the close of fact discovery—by which time MediaPointe had indisputably learned that the only infringement theory it offered in its infringement contentions (both in its PICs and in its FICs) had no basis.

## II.   FACTUAL BACKGROUND

### A.   Akamai Brought This Declaratory Judgment Action To Resolve MP's Infringement Claims, Which It First Asserted in Texas

MP first accused Akamai of infringing the Asserted Patents in a suit that it filed in the Western District of Texas ("WDTX Action") on August 16, 2021. *See* Ex. 1 [MP's Complaint in *MediaPointe, Inc., v. Akamai Technologies, Inc.*, Case No. 6:21-CV-8520, Dkt. 1]. During discovery, Akamai discovered facts showing that MediaPointe lacked valid title to the Asserted Patents (and thus lacked standing to bring its claims) and insisted that MP dismiss its case. *See* Ex. 23 [Feb. 6, 2022 Coviello Letter to Srinivasan]; Dkt. 1 [Akamai's Complaint] ¶ 11. MP then dismissed its case but refused to do so with prejudice, while also maintaining its infringement assertions against Akamai. Ex. 2 [MP's Notice of Voluntary Dismissal Without Prejudice in *MediaPointe, Inc, v. Akamai Technologies, Inc.*, Case No.

6:21-CV-852, Dkt. 37]; Dkt. 29 [Akamai's First Amended Complaint] ¶¶ 16-17.  In view of MP's prior assertion of the Asserted Patents against Akamai in a jurisdiction with no connection to either party, its refusal to dismiss its claims with prejudice, and its efforts to obtain title to the Asserted Patents from an Australian company called Streaming Media Australia Pty. Ltd. ("SMA"), Akamai filed this action seeking a declaratory judgment of patent non-infringement on September 1, 2022 in this District, where MP is located.  *See* Dkt. 1 [Akamai's Complaint]; Dkt. 29 [Akamai's First Amended Complaint] ¶ 23.  In response, MP filed infringement counterclaims against Akamai.  *See* Dkt. 45 [MP First Amended Counterclaims].[1]

### B.  MP Pursued A Meritless "GTM" Infringement Theory During Fact Discovery—And Then Abandoned It In Expert Discovery

MP's asserted patent claims require a "management center" that receives a "request for media content from a first client" and directs the first client to a "selected node" that then relays the requested content stream from a content provider to the first client.  Ex. 3 ['195 patent] at 17:41-53; Dkt. 135-1 [Memo ISO Akamai's MTS] at 3-4.  In its December 23, 2022 Preliminary Infringement Contentions ("PICs"), MP alleged that Akamai's GTM product functions as the claimed "management center."  *See, e.g.,* Ex. 5 [MP PICs] at 4 ("Akamai's Global Traffic Management functions as the management center.").

---

[1] After MP dismissed the WDTX Action, and before Akamai filed its Complaint in this Action, SMA assigned to AMHC "any residual interest" that SMA had in the patent applications that led to the Asserted Patents, and MP has asserted that it has all rights to the Asserted Patents.  Dkt. 29 [Akamai's First Amended Complaint] ¶¶ 8-9, 19, 23; Ex. 4 [MP's July 21, 2023 Resp. to ROG No. 6] at 14-16; Dkt. 34 [MP Answer to First Amended Complaint] ¶ 9.

Following that assertion, and throughout fact discovery, Akamai repeatedly notified MP that its infringement theory had no basis and provided source code, documents, and discovery responses showing that GTM had nothing to do with the claimed "management center" of the Asserted Patents and the functions it is required to perform, including receiving a "request for media content":

- On January 23, 2023, Akamai served interrogatory responses informing MP that GTM does not perform "any of the claimed management center functions" and that "MediaPointe appears to have identified GTM as the alleged management center based solely on the fact that it includes the term 'management.'"  *See* Ex. 6 [Akamai's January 23, 2023 Resp. to ROG No. 6] at 27, 33; Dkt. 181 [Order Granting MTS] at 9 ("Akamai … served an interrogatory response indicating that it felt MediaPointe's identification of GTM was not correct.").

- In February 2023, Akamai produced documents and source code showing the functionality of the accused products, including GTM.  Dkt. 135-2 [Coviello Decl. ISO MTS] ¶ 6; Dkt. 181 [Order Granting MTS] at 9 ("Akamai indicates MediaPointe had all relevant documents several months prior and in fact MediaPointe itself claims to have cited Mapper source codes in its FICs.").

Despite the extensive discovery Akamai provided regarding its GTM product, MP continued to assert throughout the remaining five months of fact discovery and in its June 2023 FICS that "***Akamai's Global Traffic Management ('GTM') functions as the management center***."  *See, e.g.,* Ex. 7 [MP FICs] at 4.

MP took fact depositions of Akamai's engineers and executives in July and August 2023.  Consistent with the documents, source code, and interrogatory responses that Akamai had produced early in fact discovery, Akamai's witnesses repeatedly testified that GTM does not perform the claimed "management center" functions—including because GTM is not a content delivery product, does not

receive requests for content from end users, and does not select Akamai edge servers to deliver content to end users. *See, e.g.*, Ex. 8 [Knox Dep.] 220:7-9 ("Q. In Akamai's GTM, do the DNS servers ever receive end-user requests for content? A. ***No***."); *id.* at 220:17-19 ("Q. Now, in Akamai's GTM, do the DNS se[r]vers ever select an edge server? A. ***No***."); Ex. 9 [Caro Dep.] 170:21-23 ("Q. To what extent, if any, is Akamai's GTM product used to deliver content to Akamai's CDN? A. ***GTM is not used to deliver content***."); *id.* 171:6-9 ("Q In Akamai's GTM product, do the DNS servers ever receive end user requests for content? A. ***No***."); Ex. 10 [Nygren Dep.] 203:25-204:2 ("Q. In Akamai's GTM, do the DNS servers ever receive end user request for content? A. ***No, they do not***."); Ex. 11 [Kanitkar Dep.] at 71:16-22 ("Q. Would you … characterize Global Traffic Management as a content delivery product? A. ***No***.").

After the close of fact discovery, and two months after MP served its FICs, MP finally abandoned its GTM infringement theory in its expert's August 21, 2023 report, conceding that GTM is ***not*** an infringing product:

> Though Akamai's publicly available product brief shows that GTM performed many of the same steps that MediaPointe accuses Akamai's "Mapper" system of infringing, ***it is my understanding that GTM is not a content delivery product.*** See AKMP_00007332, at 7333. ***Accordingly, my report does not identify GTM as an infringing product***, even though GTM is also widely used in conjunction with Akamai's content delivery products.

Ex. 12 [Rubin Opening Report] ¶ 112 n.9; Ex. 13 [Rubin Dep.] 267:9-15 ("Q.… In your expert report in this case, you do not contend that Akamai's GTM functions as the management center or receives a request for content, correct? A. ***That's right.*** Q. In your expert report, you do not identify Akamai's GTM as an infringing product at all? A. ***That's right.***").

5

In place of its GTM infringement theory, MP improperly substituted an untimely new (and equally meritless) infringement theory that Akamai's "Mapper" was instead the claimed management center—despite failing to make that allegation in its FICs.  *See* Dkt. 181 [Order Granting MTS] at 6 ("Additionally, ***the FICs actually identified a different functionality, GTM, instead of the Mapper***.").[2]

## C. Akamai Notified MP That It Intended To Seek Attorneys' Fees Due To MP's Meritless Infringement Claims And Litigation Conduct

On October 19, 2023, Akamai's counsel sent MP's counsel a letter explaining again that MP's infringement claims had no basis and that it intended to seek attorneys' fees and costs if MP did not promptly dismiss its case.  *See* Ex. 14 [Oct. 19, 2023 Coviello Letter to Srinivasan] at 1 ("This letter serves as notice that, unless MediaPointe promptly moves to dismiss all its claims with prejudice, Akamai intends to pursue all appropriate remedies, including by seeking an award of fees and costs.").

***First***, Akamai explained that MP had abandoned its GTM infringement theory after forcing Akamai to devote significant resources to it throughout ***eight months*** of discovery—*i.e.*, from MP's December 23, 2022 PICs to its August 21, 2023 expert report:

> [A]lmost two months after serving its FICs, and after Akamai had devoted significant resources responding to MediaPointe's GTM theory, MediaPointe's expert Dr. Aviel Rubin admitted in his August 21, 2023 expert report that MediaPointe's GTM infringement theory

---

[2]  In its July 23, 2023 Claim Construction Order, this Court found that all claims of the '426 patent and multiple claims of the '195 patent were indefinite.  Dkt. 101 (Claim Construction Order) at 21-22; Dkt. 208 (Final Judgment).  As a result, the only remaining asserted claims were '195 patent claims 1, 3, 4, 6, and 7.

had no basis:  "**GTM is not a content delivery product**" and he "**does not identify GTM as an infringing product**."

*See* Ex. 14 [Oct. 19, 2023 Coviello Letter to Srinivasan] at 1.

**Second**, Akamai explained that MP's new infringement theory based on Mapper was equally baseless, because its own expert admitted that Mapper does not receive a "request for media content," as required by the "management center" requirements in all the asserted patent claims:

> MediaPointe now asserts that Akamai's "Mapper serves as the 'management center' in Akamai's platform" and that servers in Akamai's Mapper, known as Domain Name System ("DNS") servers, receive the "request for media content."  Rubin Opening Report ¶¶ 167-169.  MediaPointe's expert admitted at his deposition, however, that Akamai Mapper's DNS servers do not receive requests for media content as required by the claims:
>
> > • "DNS servers merely receive a DNS query."  Rubin Dep. 173:24-174:1.
> > • A "DNS query itself is not the request for content described in the '195 patent."  *Id.* 174:2-5.
>
> The undisputed facts thus show that Akamai's Mapper (the alleged "management center") does not meet claim 1[a]'s requirement that the "management center" receives the "request for media content."

*See* Ex. 14 [Oct. 19, 2023 Coviello Letter to Srinivasan] at 2.

Despite the significant concerns that Akamai raised in its letter, MP's counsel **never even responded**.  *See* Coviello Decl. ¶ 19.

**D.    The Court Struck MP's Untimely "Mapper" Infringement Theory**

On October 16, 2023, Akamai moved to strike MP's untimely infringement theory based on Mapper, which MP had offered in place of its abandoned

infringement theory based on GTM.  *See* Dkt. 135-1 [Memo ISO Akamai's MTS ("MTS")].

At the hearing on Akamai's motion, MP's counsel admitted that discovery had shown that MP's GTM infringement theory was "***incorrect***."  *See* Ex. 15 [Nov. 20, 2023 Hearing Tr.] at 19:4-7 (MP's Counsel: "Now, it turns out through discovery through depositions that MediaPointe was incorrect.").  Despite this admission, when the Court asked why MP never filed a motion to amend its contentions, MP's counsel responded that it "***seemed unnecessary***" despite the fact that it is plainly required under the Court's rules and Scheduling Orders.  *See id.* at 33:15-34:6 ("THE COURT: And why didn't you file a motion for leave to amend your final infringement contentions? …. [MP Counsel]: … [I]t seemed unnecessary to file a motion to amend the contentions.").  MP's counsel also admitted at the hearing that MP had neither considered nor addressed whether there was "good cause" to assert its untimely infringement theory based on Mapper.  *See id.* at 32:24-33:5 ("THE COURT… [D]o we have to get over the good cause hurdle first before we consider whether it was substantially harmless? [MP Counsel]: ***I have not thought about the relationship, Your Honor, candidly, between substantially justified and harmless and good cause***.").

On January 3, 2024, the Court granted Akamai's motion to strike MP's untimely infringement theory.  Dkt. 181 [Order Granting MTS].  Among other things, the Court found "***the late disclosure of the Mapper as the management center, in lieu of GTM, untimely***" (*id.* at 7) and concluded that "***[i]dentification of a 'new element of the accused product' warrants exclusion***" (*id.* at 6).  In reaching this conclusion, the Court rejected MP's arguments that its untimely disclosures were substantially justified because "MediaPointe [did] not cite any reason for its failure to earlier identify the Mapper as the management center."  *See id.* at 8-9.  The

Court also noted that MP's untimely infringement theories harmed Akamai in multiple respects:

> The late identification of new accused functionalities, different from MediaPointe's contentions, likely affected Akamai's identification of prior art references and its invalidity contentions. As to infringement, it also may have left Akamai unable to depose fact witnesses, in depth, about the relevant components. ***The Court cannot overlook these harms***.

*Id.* at 9.

## E. The Court Granted Summary Judgment of Non-Infringement on MP's Untimely "Mapper" Infringement Theory

On October 16, 2023, Akamai also moved for summary judgment of non-infringement of the remaining asserted patent claims under MP's new "Mapper" infringement theory. Dkt. 131-1 ["MSJ"]. Akamai's motion demonstrated that MP's untimely infringement theory based on Mapper also had no basis. Indeed, MP's own expert admitted at his deposition that Akamai Mapper's DNS servers (the alleged management center) ***do not*** receive a "request for media content" as required by the asserted claims, but instead merely receive a DNS query. *See id.* at 1-2; Ex. 13 [Rubin Dep.] 173:24-174:1 ("DNS servers merely receive a DNS query."); *id.* 174:2-5 (A "DNS query itself is not the request for content described in the '195 patent.").

On January 3, 2024, the Court granted Akamai's motion for summary judgment. Dkt. 182 [SJ Order] at 7. The Court concluded that there was "***no evidence***" to support MP's untimely Mapper infringement theory. *Id.* at 9 ("[N]o evidence shows that the DNS servers, and thus Mapper, receive some other type of information that could comprise a request for media content."); *id.* ("The record also establishes that DNS queries, alone, cannot be the requests for media content within

the meaning of the '195 patent."). For these and additional reasons provided in the Court's Order, the Court concluded that "***the accused products cannot infringe in the way MediaPointe contends***." *Id.* at 12.

## III.   ARGUMENT

Under 35 U.S.C. § 285, a court may award attorneys' fees to the prevailing party in an "exceptional case." The Supreme Court has explained that an "exceptional case" under Section 285 "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane,* 572 U.S. at 554. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* A party seeking fees need only show that the case is exceptional under a "preponderance of the evidence standard." *Id.* 557-58. As the Supreme Court explained, "Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one." *Id.* at 557-58.

As explained below, this case is exceptional under 35 U.S.C. § 285 in multiple respects. *First*, MP continued to advance an exceptionally meritless infringement theory (asserting GTM was the claimed "management center") long after discovery showed that it had no basis and that its own expert rejected. *Second*, after conceding that its infringement theory had no merit, MP then switched—improperly and belatedly—to an equally meritless infringement theory (asserting Mapper is the claimed "management center") without seeking leave of the Court. *Third*, MP engaged in additional improper litigation tactics that maximized the cost of Akamai's defense.

### A. MP's Infringement Theories Were Exceptionally Meritless

Under *Octane*, an award of attorneys' fees is appropriate where the losing party asserted "exceptionally meritless claims." *Octane*, 572 U.S. at 555 (a case presenting "exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award"). MP's infringement claims plainly meet this standard.

***First***, MP's GTM infringement theory was "exceptionally meritless" because, as MP's own expert ultimately conceded, Akamai's GTM has nothing to do with the Asserted Patents' claimed "management center"—which is required to, among other things, receive a "request for media content" from a first client and direct the first client to a "selected node" that then relays the requested content stream from a content provider to the first client. *See supra* Section II.B; Ex. 13 [Rubin Dep.] 267:9-15; Ex. 12 [Rubin Opening Report] ¶ 112 n.9 ("[I]t is my understanding that ***GTM is not a content delivery product***. *See* AK-MP_00007332, at 7333. Accordingly, ***my report does not identify GTM as an infringing product*** even though GTM is also widely used in conjunction with Akamai's content delivery products. *Id.* at 7334…"). MP appears to have asserted that GTM was the claimed "management center" merely because it includes the word "management" and without regard for all of the evidence—including in interrogatory responses, source code, and deposition testimony—showing it had nothing to do with the claimed functionality. In fact, the document (Ex. 16 [AK-MP_00007332]) that MediaPointe's expert cited in concluding Akamai's GTM product is not infringing in his August 21, 2023 report was produced by Akamai six months earlier in February 2023. *See* Coviello Declaration ¶ 21. Moreover, MP's counsel admitted at the November 20, 2023 hearing on Akamai's MTS that fact discovery showed that "***MediaPointe was incorrect***" with respect to its GTM allegations and that "***GTM is a separate product from [Akamai's] content delivery products*** and … ***does***

*not deliver content to end users*." *See* Ex. 15 [Nov. 20, 2023 Hearing Tr.] at 18:12-16, 19:4-7.  Despite this, MP pursued its GTM infringement theory for more than *eight months*—including after receiving extensive discovery—until its own expert rejected it in his expert report.

Under similar circumstances, the court in *Kilopass* held that an award of fees was warranted where the plaintiff's expert was unwilling to rely on the plaintiff's infringement theory in his expert report.  *See Kilopass Tech. Inc. v. Sidense Corp.*, 2014 WL 3956703, at *13 (N.D. Cal. Aug. 12, 2014) (granting Defendant's motion for attorneys' fees and explaining that: "*the weakness of [Plaintiff's attorneys'] theory of infringement is supported by the fact that by the time the action reached the expert discovery stage, Plaintiff and its infringement expert were unwilling to rely on [Plaintiff's attorneys'] … theory of infringement* and instead attempted to assert a new theory of infringement under the doctrine of equivalents").

**Second**, after abandoning its meritless GTM infringement theory, MP then sought to replace it with an untimely and equally baseless infringement theory that Akamai's Mapper was the "management center" of the asserted claims.  *See supra* Section II.B.  But as the Court found in its Summary Judgment Order, just like its earlier theory, MP's own expert's testimony confirmed that Akamai's Mapper does not receive a "request for media content" as required by the asserted claims.  Dkt. 182 [SJ Order] at 9 (citing MP's expert's testimony and finding that "**no evidence** shows that the DNS servers, and thus Mapper, receive some other type of information that could comprise a request for media content.").  Accordingly, the Court concluded that "Akamai sufficiently demonstrates an *absence of evidence of infringement* of the 'request for media content' limitation." *Id.* at 10.

On the basis of MP's repeated assertion of meritless infringement claims, this is an exceptional case, and an award of attorneys' fees is warranted. *See, e.g.*, *Seal4Safti, Inc. v. Cal. Expanded Metal Prod. Co.*, 2022 WL 18397130, at *2 (C.D.

Cal. Dec. 15, 2022) (finding case exceptional and granting attorneys' fees where the plaintiff failed to acknowledge "the fatal weakness of its case").

### B. MP Litigated This Case In An Objectively Unreasonable Manner

The same facts—*i.e.*, MP maintaining a meritless "GTM" infringement theory for over eight months (long after Akamai produced discovery rebutting MP's claims) and then asserting a new equally meritless "Mapper" infringement theory after fact discovery without seeking leave to amend its contentions (*see* Sections II.B-D)—show that an award of attorney's fees is warranted in light of the "unreasonable manner" in which MP litigated this case. *See Octane,* 572 U.S. at 545.

In similar cases, where plaintiffs maintained infringement claims after their flaws became apparent and then attempted to change their infringement contentions after the deadline without leave to do so, courts have repeatedly awarded attorneys' fees to the defendant. For example, just as MP did here, the plaintiff in *Kilopass* attempted to change its infringement theory in its expert's report without seeking leave to amend and without providing any good cause for doing so:

> Kilopass has not presented the Court with any legitimate reason for why it had to change its theory of infringement so late in the litigation and without following the proper procedures for seeking amendment of its contentions…. Instead, it simply appears that Kilopass, its infringement expert, or both did not like the theory of infringement that was contained in Kilopass's infringement contentions and decided to try a different theory at the expert discovery stage, hoping it would be better.

*Kilopass*, 2014 WL 3956703, at *13. As a result, the Court awarded attorneys' fees to the defendant. *See id*. at *15.

Similarly, in *Phigenix*, the Court awarded attorneys' fees to the defendant where the plaintiff's expert "transformed the nature of [its] infringement theory" without the plaintiff amending its contentions and the plaintiff "provide[d] no good

reason why it failed to disclose the new theory earlier." *Phigenix*, 2018 WL 3845998, at *6-7. The court awarded attorneys' fees because the plaintiff's conduct "evince[d] that [it] unreasonably manipulated its theories to postpone defeat" and that it *made an "unreasonable determination to forge ahead with prolonged litigation when it had no tenable theory of infringement*." *Id.*

Here, as in *Kilopass* and *Phigenix*, MP made an unreasonable determination to forge ahead with prolonged litigation against Akamai even after discovery showed that its infringement theories had no merit. *See* Sections II.B-D. MP employed an improper shifting sands approach to its infringement case in which it needlessly and significantly increased Akamai's costs by changing infringement theories after the close of fact discovery and without good cause. *See id.* This litigation conduct further supports a finding that this is an exceptional case warranting an award of attorneys' fees under Section 285. *Kilopass*, 2014 WL 3956703, at *13-15; *Phigenix*, 2018 WL 3845998, at *6-7.

## C. MP's Other Litigation Tactics Needlessly Increased The Cost Of Akamai's Defense

Finally, an exceptional case finding is further supported by additional improper litigation tactics by MP that needlessly but significantly increased the cost of Akamai's defense. The following summarizes merely some of the examples of MP's improper litigation conduct in this case.

*First*, on August 11, 2023, MP filed a substantively baseless and procedurally flawed motion to compel discovery (Dkt. 116) that violated the Court's Order re. Jury Trial Schedule (Dkt. 56) ("Scheduling Order"). This Court's Scheduling Order requires any discovery disputes to be raised "at least six weeks before the cut-off" for fact discovery. Dkt. 56 [Scheduling Order] at 4-5. MP, however, first requested to meet and confer on the issues in its motion on July 26, 2023—*two days before the close of fact discovery*. *See* Dkt. 116-9 [Coviello Decl. ISO Akamai's Opp. to

MP's Motion to Compel] ¶ 12; Dkt. 116-1 [Joint Stip. Re MP's Motion to Compel] at 4.   MP's motion sought, among other things, production of documents for an undefined set of products "*not limited to those listed in its contentions*"—even after Akamai had produced documents for all of its products that stream media content. *See* Dkt. 116-1 at 3.   MP compounded its violation of the Scheduling Order by serving its portion of the joint stipulation *after fact discovery closed*, with a hearing date of August 29, 2023—*one month after the close of fact discovery*.  *See id.* at 4. Then, after forcing Akamai to expend significant time and resources opposing this untimely and baseless motion, MP "retracted" the motion at the hearing without any prior notice to either Akamai or the Court.  *See* Ex. 19 [Oct. 17, 2023 Hearing Tr.] at 5:23-25 ("The Court: [Dkt.] 116 is moot then? Mr. Liu: Yes, your honor. *We're retracting that motion*.").

   **Second**, despite initiating contact with named inventor Joseph Hayes as early as 2021 (*see* Ex. 20 [MP's July 14, 2023 Privilege Log]), and despite Akamai's January 12, 2023 discovery request regarding any attempt by MP to contact or communicate with the named inventors, MP failed to disclose its contacts and relationship with Mr. Hayes until July 25, 2023, *three days before the end of fact discovery*.  *See* Ex. 24 [Akamai's Jan 12, 2023 Requests for Production] at 11 (Request 11); Ex. 21 [MP's July 25, 2023 First Am. Initial Disclosures]; Dkt. 56 [Scheduling Order] at 3.  MP's failure to disclose its relationship with Mr. Hayes until the end of discovery prevented Akamai from taking discovery from Mr. Hayes during fact discovery.  As a result, Akamai was forced to spend significant additional resources deposing Mr. Hayes—who later admitted that he had no knowledge of the asserted patent claims—after expert discovery.

   **Third**, though Akamai is only seeking fees in this case for the period after the close of fact discovery, MP initially pursued its infringement claims against Akamai in the WDTX Action while failing to disclose to Akamai and the court that, at a

15

minimum, it knew it had standing problem. When Akamai first raised the standing issue in the WDTX Action, MP resisted standing discovery as "premature" and continued to litigate for three months without producing evidence demonstrating that it had valid title to the Asserted Patents. *See* Ex. 22 [Case Readiness Status Report from *MediaPointe, Inc., v. Akamai Technologies, Inc.*, Case No. 6:21-CV-8520, Dkt. 27] at 3. But after Akamai had raised the standing issue—without notifying Akamai or the WDTX district court, and while continuing to maintain its claims—

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████     *See* Ex. 18 [MP-AKAM_0002335 at MP-AKAM_0002336]

███████████████████████████████████████████████████████████████

████████████████████████████████████████████     Despite asserting to Akamai that it had valid title to the Asserted Patents, MP's parent AMHC admitted in Australian court proceedings at the time that it ***did not*** have proof of title to the application that led to the Asserted Patents—because SMA (a prior owner of the application) had not assigned the application to MP's predecessors. *See, e.g.*, Ex. 17 [AK-MP_00031210 at AK-MP_00031213] (Counsel for AMHC admitted to Federal Court of Australia that Mr. Stephen Villoria, AMHC.'s CEO, "***couldn't find a precise assignment*** [of International Patent Application Number PCT/AU01/00015] between SMA up to the companies from which he derived title."); Ex. 18 [MP-AKAM_0002335 at MP-AKAM_0002336] ██████████████████████████

███████████████████████████████████████████████████████████████

██████████████████. MP ultimately agreed to dismiss its case five months after filing its WDTX complaint when it was forced to admit facts in its discovery responses showing it did not have a valid assignment of rights to the Asserted Patents. Ex. 23 [Feb. 6, 2022 Coviello Letter to Srinivasan]; Dkt. 1 [Akamai's Complaint] ¶ 11. MP thus litigated its infringement claims against Akamai in WDTX for five months

while concealing from both Akamai and the court the problems with its assignment and that it was seeking to fix those problems through separate legal proceedings in Australia.  Ex. 23 [Feb. 6, 2022 Coviello Letter to Srinivasan]; Dkt. 1 [Akamai's Complaint] ¶¶11, 28.

## IV.    CONCLUSION

MP's meritless infringement theories and unreasonable litigation tactics make this case exceptional.  Accordingly, pursuant to 35 U.S.C. § 285, Akamai requests that the Court award Akamai its reasonable attorney's fees and costs for the period of this case after the close of fact discovery, by which time MediaPointe had indisputably received discovery showing that the only infringement theory it offered in its infringement contentions—*i.e.*, that GTM allegedly was the claimed "management center"—had no merit.

DATED:  February 23, 2024          Respectfully submitted,

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**

By: /s/ Michael J. Summersgill
    Michael J. Summersgill (*pro hac vice*)
     michael.summersgill@wilmerhale.com
    Alicia M. Coneys (pro hac vice)
     alicia.coneys@wilmerhale.com
    WILMER CUTLER PICKERING
     HALE AND DORR LLP
    60 State Street
    Boston, Massachusetts 02109
    Telephone:  (617) 526-6000

    Arthur W. Coviello (SBN 291226)
     arthur.coviello@wilmerhale.com
    WILMER CUTLER PICKERING
     HALE AND DORR LLP
    2600 El Camino Real, Suite 400
    Palo Alto, California 94306
    Telephone:  (650) 858-6069

    *Attorneys for Plaintiff and
    Counterclaim-Defendant Akamai
    Technologies, Inc.*

18

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff and Counterclaim-Defendant Akamai Technologies, Inc., certifies that this brief contains 5,025 words, which complies with the word limit of L.R. 11-6.1.


DATED:  February 23, 2024         By: /s/ Michael J. Summersgill
                                      Michael J. Summersgill (*pro hac vice*)
                                       michael.summersgill@wilmerhale.com
                                      WILMER CUTLER PICKERING
                                       HALE AND DORR LLP
                                      60 State Street
                                      Boston, Massachusetts 02109
                                      Telephone:  (617) 526-6000

                                      *Attorney for Plaintiff and Counterclaim-Defendant Akamai Technologies, Inc.*